**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1927
_____

ASHLEY ADAMS,
Appellant

v.

OFFICER ERIC SELHORST, New Castle County Police, in official capacity and
individually; OFFICER DOE 1, New Castle County Police, in official capacity and
individually; Officer Doe 2, New Castle County Police, in official capacity and
individually

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 09-cv-00735)
District Judge:  Honorable Stewart Dalzell

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2011
Before:  SLOVITER, SMITH and GREENBERG, Circuit Judges

(Opinion filed: October 26, 2011 )
_____

OPINION
_____

PER CURIAM

Ashley Adams appeals pro se from the District Court's order granting the

defendants' motion for summary judgment in a civil rights suit arising from Adams'

arrest for allegedly sending a harassing text message to her neighbor. For the reasons that follow, we will affirm.

Because we write primarily for the parties, who are familiar with the facts, we will not recite them except as necessary to the discussion. On October 1, 2007, Yaw and Ninette Aidoo contacted the New Castle County Police Department to complain that Mr. Aidoo had received a harassing text message on his cellular telephone. That message stated, "After Ninette goes to sleep you can sneak over and give me what I really need, it has been a long time." Officer Erich Selhorst responded to the Aidoo residence. Mr. Aidoo provided Officer Selhorst with the number from which the text message had been sent, stated that Mrs. Aidoo had repeatedly called that number but that there was no answer, and voiced his suspicion that the message had been sent by Adams, who lived on the same street. Mr. Aidoo believed that Adams may have obtained his unlisted cellular phone number through her employment at a utility company. Officer Selhorst performed a search of the Criminal Justice Information System ("CJIS") and discovered that the phone number from which the text message originated had been used previously by Adams in a separate police matter.

The next day, Officer Selhorst and Officer John Mancuso spoke with Adams. Adams stated that while she knew of the Aidoos, she did not know their names and denied sending the text message. She also confirmed that her cellular telephone number matched the number that Mr. Aidoo identified as the source of the text message. In addition, Adams acknowledged receiving three calls from an unknown telephone number

2

the previous evening. When Officer Selhorst asked Adams if she still worked for the power company, Adams stated that her employment was irrelevant. Based on the evidence, Officer Selhorst drafted a warrant that charged Adams with harassment. See 11 Del. C. § 1311(a)(2). After the warrant was signed by a judge, Officer Selhorst had it filed by a data officer.

On October 4, 2007, Officer Selhorst contacted the power company, which confirmed that Adams worked there, but indicated that Mr. Aidoo's cellular telephone number did not appear in his account records. That evening, at 9:46 p.m., Officers Selhorst and Mancuso returned to Adams' home to execute the arrest warrant. The officers met Adams in her garage, where she was placed in handcuffs. Adams then informed the officers that she had turned herself in earlier that day at police headquarters. When the officers confirmed that account through a check of the CJIS, Adams was released. The police officers left Adams' home at 10:04 p.m.

Adams filed a pro se complaint on October 1, 2009. She named as defendants Officer Selhorst, as well as two unidentified officers who allegedly were also present when she was arrested.[1] The District Court liberally construed Adams' pro se complaint

---

[1] The District Court ordered the defendants to provide the names of the two unidentified officers, who were listed in Adams' complaint as "Officer Doe 1" and "Officer Doe 2." In response, the defendants indicated that to the best of their knowledge, Officer Mancuso was the only other police officer present with Officer Selhorst when Adams was arrested. In her response to Officer Selhorst's motion for summary judgment, Adams asked for permission to file an amended complaint naming Officer Mancuso. The District Court denied this request, holding that such an amendment would be futile, largely for the same reasons that it entered summary judgment in favor of Officer

to allege federal civil rights and state law causes of action for false arrest and false imprisonment, use of excessive force, malicious prosecution, selective enforcement, failure to train, abuse of process, slander, infliction of emotional distress, assault and battery, and trespass. After discovery was completed, the parties filed cross-motions for summary judgment. The District Court granted the defendants' motion, denied Adams' motion, and dismissed all claims with prejudice. Adams v. Selhorst, 779 F. Supp. 2d 378 (D. Del. 2011). Adams timely appealed.

We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. Curley v. Klem, 298 F. 3d 271, 276 (3d Cir. 2002). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (2010); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).

Adams alleged that she was falsely arrested and falsely imprisoned because Officer Selhorst lacked probable cause. An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983. See Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). Similarly, "where the police lack probable cause to

---

Selhorst. Under these circumstances, we conclude that the denial of Adams request to amend her complaint was not an abuse of discretion, Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000), and that the District Court properly granted summary judgment in favor of the "Doe" defendants.

make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). Where, as here, an arrest is made pursuant to a warrant, "[a] plaintiff may succeed in a § 1983 action for false arrest . . . if [he] shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).

We agree that Officer Selhorst had probable cause to arrest Adams for harassment. In the warrant affidavit, Officer Selhorst stated that he observed a harassing text message on Mr. Aidoo's cellular telephone, explained that Mr. Aidoo believed that Adams may have sent the message because of an ongoing dispute, and noted that the text message had been sent from a telephone number which belonged to Adams (as confirmed by Adams herself and by a search of the CJIS). Officer Selhorst's affidavit also noted, however, that Adams had denied sending the message.

5

In support of her claims, Adams asserted that the Aidoos fabricated the text message, that Officer Selhorst should have subpoenaed her telephone records, and that the allegations in the warrant affidavit did not correspond with the police reports. These contentions are unavailing. Adams failed to show that Officer Selhorst had reason to doubt the evidence which supported the arrest warrant. Moreover, the absence of Adams' telephone records did not create a falsehood in applying for the warrant. See Baker v. McCollan, 443 U.S. 137, 145-46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence"). To the extent that the information in the arrest warrant affidavit differed from that in the police reports, those discrepancies are not material to the finding of probable cause. Accordingly, because the evidence, viewed most favorably to Adams, reasonably would not support a contrary factual finding, summary judgment was proper on the false arrest and false imprisonment claims.[2] Sherwood, 113 F.3d at 401.

_____

[2] Furthermore, because Officer Selhorst had probable cause to arrest Adams, her malicious prosecution claim must fail. See, e.g., Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (holding that a malicious prosecution plaintiff must show, inter alia, that the criminal proceeding was initiated without probable cause). In any event, we agree with the District Court that there is no evidence in the record that Officer Selhorst acted with malice. McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (describing elements of malicious prosecution claim). Relatedly, the District Court properly rejected Adams' abuse of process claim because she failed to demonstrate that Officer Selhorst pursued criminal charges against her for any reason other than intended by law. Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989) ("In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" (quoting Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977))).

We also agree that despite what the District Court deemed "an unusual twist," namely, the fact that the warrant had already been executed when Adams was arrested, Officer Selhorst is entitled to qualified immunity. To determine whether a government officer is entitled to qualified immunity, we ask (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02 (2001). "[W]e have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant." Berg v. Cnty. of Allegheny, 219 F.3d 261, 273 (3d Cir. 2000). "Nevertheless, an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances." Id. Those "circumstances include, but are not limited to, information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight." Id. Here, at the time of Adams' arrest, Officer Selhorst had access to the CJIS, which indicated that Adams had turned herself in earlier that day. Under the circumstances, however, we conclude that a reasonable officer would have believed that his conduct was lawful in light of the information he possessed at the time. Significantly, the warrant was issued only the day before Officer Selhorst went to arrest Adams, cf. Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st Cir. 1990) (noting that "the jury could have believed that [court employee] was reckless by not checking his own records before recirculating a warrant

7

that was five months old."), and she was released immediately after Officer Selhorst confirmed her claim that the warrant had already been executed. Cf. Pena-Borrero v. Estremeda, 365 F.3d 7, 13 (1st Cir. 2004) ("While the officers arguably were simply negligent in failing to check on the warrant before they acted on it, following through on the arrest and detention once confronted with appellant's documents reflected a much more deliberate disregard for whether the warrant remained valid."); Berg, 219 F.3d at 267 (noting that constable refused to look at release documents demonstrating that arrestee was no longer on parole).

Adams also alleged that Officer Selhorst used excessive force. When a police officer uses force to effectuate an arrest, that force must be reasonable. Graham v. Connor, 490 U.S. 386, 394 (1989). Courts considering whether the use of force was objectively reasonable should consider, inter alia, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers, whether she actively is resisting arrest, the possibility that the suspect is violent or armed, and the number of persons with whom the police officers must contend at one time. Estate of Smith, 318 F.3d at 515. While the question of reasonableness is frequently one that should be left to the ultimate factfinder, summary judgment is appropriate when the court resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances. See Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) (declining to grant summary judgment where there were genuine issues of fact). In this case, Adams was arrested for the misdemeanor charge of

harassment, she did not resist, and there is no indication that she was violent or armed. Officer Selhorst placed Adams in handcuffs, but removed them several minutes later after confirming that she had already turned herself in on the arrest warrant. We agree that Adams has not produced evidence from which a finder of fact could arguably infer that Officer Selhorst's use of force was objectively unreasonable in light of the circumstances surrounding her arrest.[3]

According to Adams, Officer Selhorst enforced the harassment law in a racially discriminatory fashion. Selective enforcement of a facially valid law is unconstitutional under the Equal Protection Clause. Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993). To establish a selective enforcement claim, Adams must show "(1) that [s]he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." Dique v. N.J. State Police, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (internal quotation marks, alterations omitted). Adams presented no evidence that similarly situated individuals were treated differently. Accordingly, the District Court properly entered summary judgment in favor of Officer Selhorst on the selective enforcement claim.

---

[3] In her response to Officer Selhorst's motion for summary judgment, Adams provided an account of her arrest. Because this statement was neither an affidavit nor a sworn declaration, the District Court properly refused to consider it. See Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 323 (3d Cir. 2005); Fed. R. Civ. P. 56(c) (2010).

Adams also attempted to make out a municipal liability claim for failure to train under Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978). Notably, though, Adams' complaint named only individual police officers as defendants. Even if she had named a proper defendant, however, we agree that she did not point to any evidence that a constitutional violation occurred as a result of an approved municipal or governmental custom. Accordingly, the District Court was correct to grant summary judgment on this claim. Woloszyn, 396 F.3d at 325-26.

In her complaint, Adams alleged that the police officers who were present during her arrest failed to intervene when the other officers allegedly violated her constitutional rights. "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). However, as described above, Adams failed to demonstrate that her underlying constitutional rights were violated. Therefore, she cannot maintain a claim for failure to intervene. Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) (stating that "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation"). In addition, we agree with the District Court that Adams offered no evidence related to the elements of a conspiracy claim under 42 U.S.C. § 1985. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010) ("To survive a motion for summary judgment on [plaintiff's] section 1985(3) claim, [the plaintiff] first was required to put forward facts that would allow a reasonable factfinder

10

to conclude that [the defendants] formed a conspiracy to deprive him of his rights."). Because Adams failed to state a conspiracy claim, the District Court properly ruled that her related § 1986 claims also failed.[4] Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).

Finally, we agree that Officer Selhorst is immune from Adams' common law tort claims. The Delaware Tort Claims Act generally immunizes "governmental entities and their employees . . . from suit on any and all tort claims seeking recovery of damages." 10 Del. C. § 4011(a); see also Couden v. Duffy, 446 F.3d 483, 498 (3d Cir. 2006). Although this provision is not applicable when the employee's actions "were not within the scope of employment" or "were performed with wanton negligence or willful and malicious intent," § 4011(c), Adams has not established that those elements are present here. Indeed, Officer Selhorst was clearly acting as a police officer when he arrested Adams, and, as described above, his actions were reasonable. Moreover, for essentially the reasons provided by the District Court, there is no merit to Adams' allegations of slander, intentional infliction of emotional distress, trespass, and assault and battery.

---

[4] We also agree that 42 U.S.C. §§ 1981 and 1988 are not relevant to Adams' claims. See Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001) (noting that § 1981 prohibits race discrimination in making and enforcing contracts); Robertson v. Wegmann, 436 U.S. 584, 588 (1978) (holding that pursuant to § 1988(a), where there is no applicable federal rule, courts are to consider "common law, as modified and changed by the constitution and statutes of the [forum] State"). Furthermore, the District Court properly rejected Adams' attempt to bring a claim under the Delaware Constitution and a non-existent Delaware statute.

For the foregoing reasons, we will affirm the judgment of the District Court. [5]

[5] We grant Officer Selhorst's Motion for Leave to File Supplemental Appendix and Adams' Motion for Leave to File Supplemental Appendix, although we do not consider any documents that are not part of the District Court record. <u>United States ex rel. Willis v. United Health Group, Inc.</u>, -- F.3d --, 2011 WL 2573380, at *4-5 (3d Cir. 2011).