**STATE**

v.

**Frederick TAYLOR a.k.a. Frederick Taylor Bilal.**

No. 91–610–C.A.

Supreme Court of Rhode Island.

March 17, 1993.

James E. O'Neil, Atty. Gen., Aaron Weisman and Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld, Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

MURRAY, Justice.

On March 16, 1988, the State of Rhode Island filed a five-count criminal information against the defendant, Frederick Taylor Bilal, and the case came to trial in Providence County on July 5, 1990. Prior

to impaneling the jury, the defendant moved to suppress certain evidence, alleging that the seizure of this evidence was the product of an illegal arrest made in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 6, of the Rhode Island Constitution. In addition, the defendant moved to dismiss the case, claiming that the state had failed to provide him with a speedy trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 10, of the Rhode Island Constitution. The trial justice denied these pretrial motions, the case came before a jury, and the jury convicted the defendant of possession of cocaine and carrying a pistol without a license. The defendant appeals the trial justice's denial of both of his pretrial motions.

The facts in this case are as follows. On November 21, 1987, defendant, driving a white automobile, approached Officer Dennis Malloy (Officer Malloy) of the Cumberland police department and asked Officer Malloy for directions. Officer Malloy gave defendant directions, and as defendant drove away, Officer Malloy noted defendant's license-plate number. Officer Malloy then called the Cumberland police station and a dispatcher ran a check on this license-plate number in the National Crime Information Center (NCIC) computer. This check revealed an outstanding warrant for the arrest of Frederick Taylor Bilal, the owner of the white vehicle.

The next night Officer Malloy observed the same individual who had stopped him for directions driving the same vehicle the check of which had revealed the outstanding warrant. Officer Malloy pulled the car over to the side of the road, identified the driver as Frederick Taylor Bilal, and arrested defendant pursuant to the outstanding warrant. Incident to this arrest, Officer Malloy seized the keys to defendant's car, defendant's jacket, a brown leather pouch with money protruding from it, and a spiral-bound notebook from the inside of defendant's automobile. Officer Malloy placed defendant in the back seat of his police car and returned to the Cumberland police station.

At the police station an officer from the Cumberland police department strip-searched defendant and placed defendant in a cell. The defendant had previously told Officer Malloy that he believed the outstanding warrant for his arrest was no longer valid. Officer Malloy then instructed another officer, Sergeant John Moran (Sergeant Moran), to check on the validity of the warrant. Officer Malloy learned from Sergeant Moran that the city of Cranston still had a valid warrant outstanding for defendant's arrest, and Officer Malloy informed defendant of this fact.

At this point defendant asked Officer Malloy for his jacket because the cell in which he was imprisoned was cold. Before handing over the jacket, Officer Malloy searched the pockets and found, among other items, five bullets and a small plastic bag containing cocaine. With this information in hand, Sergeant Moran obtained a search warrant to search defendant's automobile. A search of the trunk revealed a .357 magnum pistol, a scale, and a video camera.

The defendant attacked the constitutionality of his arrest and the subsequent search of his jacket and his automobile by moving to suppress the seized evidence. At a pretrial hearing Officer Malloy testified that the sole reason he arrested defendant was to execute the outstanding arrest warrant. The prosecution, however, was unable to produce this alleged arrest warrant at the motion-to-suppress hearing because the Cranston police department had destroyed the warrant. Defense counsel argued to the trial justice that because the arrest of defendant was based solely on the validity of the arrest warrant, the failure of the prosecution to produce this arrest warrant at the motion-to-suppress hearing rendered the arrest and subsequent search of defendant's jacket and automobile illegal.

The trial justice rejected this argument and denied defendant's motion to suppress. The trial justice stated:

"I am going to find that under the circumstances the police officer's reliance

on the information provided to him by members of his own department based on the result of the NCIC inquiry was reasonable. I am also going to find that based on a subsequent inquiry made directly by the police officer to the police department in Cranston, at whose request apparently the warrant had been issued, that there was in fact then a valid arrest warrant outstanding and unexecuted. * * * [T]here is sufficient evidence to find * * * the arresting officer, acting in good faith, honestly and reasonably believed that there was a valid[,] enforceable[,] outstanding[,] unexecuted[,] arrest warrant."

I

■ As noted earlier in this opinion, defendant attacks the validity of his arrest under the Rhode Island and United States Constitutions. As a general rule this court follows federal precedents and interprets article I, section 6, of the Rhode Island Constitution as identical to the Fourth Amendment to the United States Constitution. *See Pimental v. Department of Transportation*, 561 A.2d 1348, 1350 (R.I. 1989). On rare occasions we have provided greater protections to a criminal defendant under our constitution than would exist under the United States Constitution. *Id.* at 1352–53 (finding drunk-driving roadblocks invalid under our constitution although the roadblocks are valid under the United States Constitution). In this case we need not depart from federal precedents because it is clear that under both the Rhode Island and the United States Constitutions defendant's arrest was illegal. We must reverse his conviction.

■ It is well-settled law that when a state intends to justify an arrest on the basis of a warrant, the burden is on the state to produce the warrant and supporting affidavit in order that the trial court can determine whether the warrant was properly issued and constitutionally sufficient. *See State v. DiPrete*, 468 A.2d 262, 265 (R.I.1983) (indicating that it is the burden of the prosecutor to produce the arrest warrant that forms the basis of an arrest).

*See also Bland v. State*, 141 Ga.App. 858, 859, 234 S.E.2d 692, 693 (1977) (stating that "[t]he burden of proof is upon the state to show what facts constituting probable cause existed and were presented to the magistrate before the warrant was issued"); *Gant v. State*, 649 S.W.2d 30, 33 (Tex.Crim.App.), *cert. denied*, 464 U.S. 836, 104 S.Ct. 122, 78 L.Ed.2d 120 (1983) (stating that "when an accused objects to admission of evidence on the ground that it is tainted by a warrantless arrest and the State relies on an arrest warrant, in the absence of waiver, reviewable error will result unless the record reflects that the arrest warrant was exhibited to the trial judge for a ruling").

In the instant case the prosecution failed to produce the warrant that furnished the basis for defendant's arrest. Indeed the prosecutor informed the trial justice that the city of Cranston no longer had any record of the warrant because the warrant had been destroyed. It was impossible, therefore, for the trial justice to have reviewed the constitutional sufficiency of the warrant. The trial justice did not know of any of the facts that provided the probable cause for the issuance of the warrant. In addition the trial justice was unaware of whether the warrant met all the technical requirements for its validity. We believe the prosecution completely failed to meet its burden of proving that the warrant in dispute in this case was constitutionally sufficient.

■ Although it is not exactly clear from the record, it appears that the trial justice relied on two separate theories to excuse the police department's failure to produce the warrant. The first is the so called fellow-officers rule. Pursuant to this rule, an officer may rely on the communications of fellow officers who claim to possess probable cause to search or arrest an individual. *Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971). In *Whiteley*, a police officer relied on a radio police bulletin in arresting a defendant. The Supreme Court wrote, "[c]ertainly, police officers called upon to aid other officers in execut-

ing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause." *Id.* In this case the trial justice apparently believed that Officer Malloy was entitled to rely on the communication from the Cranston police department that there was a valid warrant for defendant's arrest, and that this reliance excused the state from producing the warrant at the motion-to-suppress hearing.

An examination of the fellow-officers rule, however, demonstrates that the rule cannot relieve the state of its burden of proving the validity of the arrest. In *Whiteley* and *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Supreme Court held that when an officer relies on a communication from a fellow officer in arresting an individual, the controlling question is whether the original, communicating officer had a valid warrant based upon probable cause to support the arrest. *Hensley,* 469 U.S. at 230–31, 105 S.Ct. at 681, 83 L.Ed.2d at 613; *Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. In *Hensley,* the Court wrote,

> "*Whiteley* supports the proposition that, when evidence is uncovered during a search incident to an arrest in reliance on a flyer or bulletin, its admissibility turns on whether the officers who *issued* the flyer possessed probable cause to make the arrest. It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance." 469 U.S. at 231, 105 S. Ct. at 681, 83 L. Ed.2d at 613.

In the instant case the fact that Officer Malloy relied upon the belief that the Cranston warrant was constitutionally sufficient cannot sustain the arrest. The state must be able to prove that the officer who obtained the arrest warrant and registered the warrant on the NCIC computer had probable cause to support the warrant. The prosecution has failed to provide any evidence concerning the circumstances that led to the issuance of this arrest warrant, and as a result the trial justice could not possibly determine whether the warrant

was supported by probable cause. We conclude, therefore, that the fellow-officers rule does not relieve the state of its burden of proof in this case.

II

■ In addition to the fellow-officers rule, the trial justice also concluded that Officer Malloy's good-faith belief in the existence of the warrant excused the state from proving the validity of the warrant at the motion-to-suppress hearing. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court did announce a good-faith exception to the warrant requirement, and the state relied on this exception in the state's prebriefing statement. In *Leon,* a California police officer prepared an application with an attached affidavit for a search warrant, and a California Superior Court judge issued a facially valid search warrant. *Id.* at 902, 104 S.Ct. at 3409–10, 82 L.Ed.2d at 684–85. Officers relying on the validity of this search warrant searched the defendant's residence and seized large quantities of drugs. *Id.* Following the search, upon a motion to suppress, a Federal District Court judge determined that the affidavit in support of the search warrant was insufficient to provide probable cause, and accordingly, the Federal District Court granted in part the motion to suppress. *Id.* at 903–04, 104 S.Ct. at 3410–11, 82 L.Ed.2d at 685–86. The Ninth Circuit affirmed. *Id.* On petition for certiorari to the United States Supreme Court, the Court held that the exclusionary rule does not bar the admission of evidence seized in objectively reasonable, good-faith reliance on a search warrant that a court subsequently holds to be defective. *Id.* at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698.

The good-faith exception to the warrant requirement outlined in *Leon* is a narrow exception and does not excuse the failure of the state to produce the warrant in this case. The Court made clear in *Leon* that a court has to view the good faith on the part of the police officer from an objective viewpoint. *Id.* An officer cannot blindly rely

on the existence of a search warrant to justify his or her arrest or search of an individual. An officer must have a reasonable, good-faith belief that the warrant was technically valid and supported by probable cause. *See id.* The Supreme Court wrote:

"Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth. * * * The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); in such circumstances, no reasonable well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' * * * Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient— *i.e.*, in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S. Ct. at 3421, 82 L. Ed.2d at 698–99.

In the instant case it was impossible for the trial justice to determine whether the officer who prepared this alleged arrest warrant misled the magistrate or whether the magistrate acted in a neutral and detached manner or whether the affidavit had sufficient indicia of probable cause or whether the arrest warrant particularly identified defendant. The prosecution presented no evidence concerning these issues before the trial justice. Without this evidence before the trial justice, the trial justice could not conclude that Officer Malloy objectively believed that this warrant was technically valid and supported by probable cause.

Language in *Leon* that relates the good-faith exception to the fellow-officers rule supports this conclusion. 468 U.S. at 923

n. 24, 104 S.Ct. at 3420 n. 24, 82 L.Ed.2d at 698 n. 24. The Supreme Court stated in *Leon* that in situations in which the preparation and execution of a warrant involves multiple police officers, the court should examine the objective good faith of each of the officers. *Id.* The Court wrote:

"References to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.* (citing *Whiteley v. Warden*, 401 U.S. at 568, 91 S. Ct. at 1037, 28 L. Ed.2d at 313).

This language in *Leon* precludes the use of the good-faith exception in this case. Because Officer Malloy never had the arrest warrant before him, it was impossible for the trial justice to determine if the officer had an objectively reasonable belief that the warrant was supported by probable cause. Moreover, the prosecution presented no evidence concerning the objective good faith of the officers who prepared the warrant and entered the warrant into the NCIC computer system. We do not believe, therefore, that the good-faith exception applies in this case to discharge the state's burden of proving the validity of the arrest warrant that formed the basis for defendant's arrest.

### III

██ On this appeal the state posits a third theory to justify its failure to prove the validity of the arrest warrant at the motion-to-suppress hearing. The state asserts that the warrant issued by the city of Cranston was not a normal arrest warrant but was a capias. "At common law a capias was a writ directing the sheriff to arrest

a defendant and bring the defendant before the court to answer the charge set forth in the writ." *Calhoun v. City of Providence,* 120 R.I. 619, 623 n. 2, 390 A.2d 350, 352 n. 2 (1978) (citing *Fields v. Ragelmeir,* 19 Ohio Dec. 164, 7 Ohio N.P. 585 (1908)). In present practice a trial justice may issue a capias from the bench in situations in which a defendant has failed to appear before the court to answer to a misdemeanor charge.

The state argues that the NCIC computer readout upon which Officer Malloy relied indicated that the warrant in dispute in this case was a capias. The state further suggests that we should employ a different constitutional analysis to a capias from that which we would apply to a normal arrest warrant. The state argues that when a trial justice issues a capias, he or she does so on the basis of a single fact—the failure of an individual to appear before court to answer to a misdemeanor charge. The state believes then that when a Superior Court justice reviews the validity of a capias pursuant to a motion to suppress, the Superior Court justice has no real function to perform. The state contends that when a capias is issued, there is no warrant application, there is no affidavit, in fact, there is nothing for the Superior Court justice to review to determine if the capias is supported by probable cause. The failure of the individual to appear to answer the misdemeanor charge is the sole fact that provides the probable cause to arrest the defendant. The state concludes that the failure of the prosecution to provide evidence supporting the issuance of the capias should not render the arrest illegal.

We note at the outset that the record does not support the state's contention that the warrant in dispute in this case was a capias. The fact that the warrant was a capias was never presented to the trial justice. At all times during the motion-to-suppress hearing the trial justice referred to the warrant as a "warrant," not as a "capias." Moreover Officer Malloy testi-fied that he thought the warrant related to defendant's issuing of "bad checks." Officer Malloy never indicated that the warrant was a capias. This argument, therefore, is not properly before the court because the state failed to raise this argument in the lower-court proceeding. *Fiske v. MacGregor,* 464 A.2d 719, 726 (R.I.1983).

Setting aside this defect with the state's argument, we fail to perceive a logical basis for treating a capias differently from the way we treat an arrest warrant. A trial justice reviewing the constitutionality of the issuance of a capias certainly performs an essential function. First, by requiring the state to produce the capias at a motion-to-suppress hearing, the trial justice assures himself or herself that a capias did in fact exist and that the arresting officer executed the capias in a timely fashion. Moreover, since a court issues a capias because an individual failed to appear to answer a misdemeanor charge, a trial justice in reviewing the sufficiency of a capias must determine that the individual in fact received notice of the misdemeanor charge and his or her obligation to appear in court. Thus, we find that the state's assertion that the warrant for defendant's arrest was a capias has no bearing on the outcome of this suppression issue.[1]

We hold that the state has failed to prove the validity of defendant's arrest and that the arrest is therefore illegal. Because officers of the Cumberland police department seized evidence from defendant's jacket and automobile, including the cocaine, the bullets, the pouch containing money, the .357 magnum pistol, the scale, and the video camera, as a product of this unlawful arrest, this evidence should not have been admitted at defendant's trial and defendant's conviction must be reversed.

## IV

Finally, the defendant argues that we should reverse his conviction because the

---

1. It appears from the record that the trial justice also believed that because defendant failed to ask for a copy of the warrant through discovery, defendant may have "waived" his right to con-test the validity of the warrant. Because the state did not brief this issue on this appeal, we do not address it.

state failed to provide him with a speedy trial in compliance with article I, section 10, of the Rhode Island Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. We agree with the trial justice that the defendant has failed to demonstrate any prejudice resulting from the state's delay in bringing his case to trial, and accordingly his speedy-trial argument is without merit.

Having concluded that the search and the seizure of evidence from the defendant to be the product of an illegal arrest, we sustain the defendant's appeal. The judgment of conviction is reversed and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.