

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-2002

# Nawrocki v. Coolbaugh

Precedential or Non-Precedential:

Docket No. 01-1196

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Nawrocki v. Coolbaugh" (2002). *2002 Decisions.* Paper 256.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/256

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


NO. 01-1196


LEONARD NAWROCKI; PAULA NAWROCKI,
Husband and Wife,

Appellants

v.

TOWNSHIP OF COOLBAUGH; TOWNSHIP OF COOLBAUGH
POLICE DEPARTMENT; ANTHONY D. FLUEGEL; POCONO
MOUNTAIN SCHOOL DISTRICT; THOMAS KOPETSKIE;
JOANNE CHAMBERS; DR. DAVID KRAUSER


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 98-cv-00009)
District Judge:  Hon. A. Richard Caputo


Submitted Under Third Circuit LAR 34.1(a)
April 1, 2002

Before:  SLOVITER, FUENTES, and MICHEL*, Circuit Judges

(Filed    April 8, 2002              )


OPINION OF THE COURT

_____

     *    Hon. Paul R. Michel, United States Court of Appeals for the Federal Circuit,
sitting by designation. SLOVITER, Circuit Judge.

     Paula Nawrocki and her husband (the Nawrockis) filed a multi-count complaint
making various claims, including malicious prosecution, defamation, loss of consortium,
and due process violations against the Township of Coolbaugh, its police department,
and the Police Chief, the Pocono Mountain School District, two of the School District
officials and one teacher.  The District Court granted summary judgment against the
Nawrockis on some of their claims, granted judgment as a matter of law on others, and
let their defamation claim go to the jury which found for the defendant.  The Nawrockis
now appeal, challenging various evidentiary and procedural rulings of the District Court.

I.
BACKGROUND

     In the summer of 1993, administrators in the Pocono Mountain School District
received the first of over forty bizarre and threatening letters, pictures, and objects, many
sexual and pornographic in nature, directed at Jo Anne Chambers, a teacher at the
Coolbaugh Learning Center (CLC).  By the spring of 1994, various school teachers and
administrators came to suspect that Paula Nawrocki, another teacher at CLC, was
responsible for the letters.  On April 19, 1994, Chambers, Thomas Kopetskie, the
principal of CLC, and another school official met with Anthony Fluegel, Chief of the
Coolbaugh Police Department, to advise him of the letters and other events surrounding

the alleged harassment and stalking of Chambers.

As part of the investigation of these events, the School District arranged for a polygraph test on Nawrocki, Chambers, and some other teachers. The polygraph examiner concluded that Nawrocki was responsible for the harassing letters.

In November 1994, Chambers told Fluegel that Nawrocki had tried to force her off an interstate highway. Fluegel thereafter prepared a criminal complaint, which was approved by the District Attorney. Fluegel then arrested Nawrocki and charged her with reckless endangerment, harassment, stalking, assault and terroristic threats. A state district justice held a preliminary hearing on the charges against Nawrocki and bound the charges over for trial.

During discovery in the criminal case against Nawrocki, Nawrocki's defense counsel discovered that Chambers' DNA had been found on a stamp from one of the original harassing letters. Nawrocki's defense counsel revealed this evidence to the District Attorney at a pre-trial meeting at which Fluegel was present. Fluegel then questioned Chambers, who told him that during a meeting in the summer of 1994 with Fluegel and an Assistant District Attorney, when the two others were out of the room, she had handled and opened the envelope in question and one of the stamps fell off. She claimed that she licked the back of the stamp in an attempt to reattach it but when this failed, she used some glue to reattach the stamp. A chemical analysis of the back of the stamp, done after Chambers allegedly tried to reattach the stamp, did not reveal the presence of any glue.

In January 1996, Nawrocki was acquitted of the criminal charges against her. At trial, her defense theories were (1) that Chambers was in effect stalking and harassing herself and had fabricated the evidence against Nawrocki and (2) that Fluegel intentionally did not investigate the possibility that Chambers was harassing herself. Following her criminal trial and after the School District held a public hearing on the matter, Nawrocki was reinstated as a school teacher on March 25, 1997.

In early 1998, Nawrocki and her husband filed a seventeen-count complaint in Pennsylvania state court against Fluegel, Chambers, Kopetskie, David Krauser (the Superintendent of the School District), the School District, the Township and the Police Department. Defendants removed the case to federal court pursuant to 28 U.S.C. 1446. On July 31, 1998 and then again on July 17, 2000, the District Court dismissed some of the claims against the defendants. Prior to trial and apparently before the District Court's July 17, 2000 decision, Kopetskie, Krauser, the School District and Chambers agreed to settle with the Nawrockis but the complaint was not dismissed as to them until February 27, 2001, after the trial.

The trial began on November 27, 2000. Sometime before the case went to the jury, the District Court granted judgment as a matter of law on the malicious prosecution claims, sending only the defamation claim against Fluegel to the jury. App. at 102-108. The jury found in favor of Fluegel on that claim.

We turn to the Nawrockis' argument.

## II.
### JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. 1331 (2001). Fluegel and the Township argue that this court lacks jurisdiction over the present appeal because the appeal is from orders that are not final. Specifically, they argue that the Notice of Appeal, dated January 11, 2001, which appealed the District Court's July 17, 2000 decision granting summary judgment to the Township, the denial of reconsideration of that decision on November 6, 2000, and the entry of judgment against the Nawrockis pursuant to Federal Rule of Civil Procedure 50 on their 42 U.S.C. 1983 malicious prosecution claims, was an appeal of interlocutory (and, hence, not final) orders.

Because the claims against the School District, Kopetskie, Krauser, and Chambers were not dismissed until February 27, 2001, and a counterclaim of Chambers against the Nawrockis was not dismissed until March 9, 2001, the Nawrockis' appeal of the District Court's grant of summary judgment and entry of judgment pursuant to Federal Rule of Civil Procedure 50 does seem to have been taken prematurely. This court has appellate jurisdiction over prematurely filed appeals so long as the appeal ripens before we take any action. See, e.g., Gen. Ceramics Inc. v. Firemen's Fund Ins. Cos., 66 F.3d 647, 651 (3d Cir. 1995); see also New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1178 (3d Cir. 1991). All claims and parties that remained after the jury trial were

dismissed by the District Court before this court began considering this case. Upon the dismissal of the remaining claims, the Nawrockis' appeal ripened. Therefore, this court has jurisdiction over this appeal.

III.

DISCUSSION

A.   Summary Judgment in Favor of the Township on 42 U.S.C. 1983 Claims

The Nawrockis argue that the Township is liable for violating Nawrocki's civil rights under 1983. A municipality can be liable under 1983 for acts pursuant to an unconstitutional policy, custom or practice. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). The District Court, in granting a motion for summary judgment in favor of the Township, found that the Nawrockis had not offered any evidence of any unconstitutional policy, custom or practice pursuant to which Nawrocki had been maliciously prosecuted. This court conducts a plenary review of a district court's grant of summary judgment. See, e.g., Beers-Capitol v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001).

The Nawrockis make various arguments relating to the Township's liability. First, they argue that the Township delegated to Fluegel responsibility for promulgating police policies and instituting police customs, that Fluegel's initiation of Nawrocki's prosecution was in accordance with such policies and customs, and that such policies and customs are unconstitutional. Second, they argue that even if Fluegel's actions did not constitute policy or custom, his single act of prosecuting Nawrocki is effectively a custom or policy, and thus the Township can be liable for this action. Third, they argue that Fluegel's investigation of the harassment of Chambers violated the Township's policies and customs and that the Township is liable because it allowed Fluegel to violate Township policies and customs. In particular, they argue that the Township can be liable because it recklessly disregarded and was deliberately indifferent to Fluegel's alleged practice of arresting citizens without probable cause.

The Nawrockis point to various alleged policies or customs of the Township that they say were either unconstitutional or were violated. First, they say the Township has an unwritten policy of permitting improper investigations and/or allowing prosecutions without probable cause. If the Township did have such policies or customs, they would be unconstitutional, but the Nawrockis do not point to any "official proclamation, policy, or edict . . . [that] virtually constitute[s] law." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). The District Court did not err in finding that there was no evidence of an unconstitutional policy or custom.

Second, the Nawrockis argue that Fluegel violated various policies, including failing to maintain a chain of custody for evidence by leaving Chambers alone with evidence on at least one occasion and by allowing her to take home original tapes that had been made of her conversations over the course of several school days. This court has held that

> [o]nce a 1983 plaintiff identifies a municipal policy or custom, he must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." If . . . the policy or custom does not facially violate federal law, causation can be established only by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice."

Berg, 219 F.3d at 276 (alterations in original) (citations omitted) (quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404, 407 (1997)). The Nawrockis have not pointed to any evidentiary support for their claim that the Township was deliberately indifferent to whether police policies were violated.

Third, the Nawrockis argue that if Fluegel's actions were not pursuant to an explicit policy or a custom, an unconstitutional government policy can be inferred from even an isolated act by a government official, citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion). The Supreme Court has articulated several guiding principles for determining whether an act by an official allows an inference of government policy:

First, . . municipalities may be held liable under 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)) (citations and emphases omitted). Although there may have been some inadequacies in the way in which municipal policies were followed in this case, an official's failure to adhere strictly to municipal policies does not itself support an inference of a policy that can subject the Township to liability.

For these reasons, the Nawrockis have failed to establish that the Township is liable under 1983 for Fluegel's actions with respect to the Nawrockis.

B. Judgment as a Matter of Law Relating to Malicious Prosecution Claims

After the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994), the legal landscape surrounding 1983 malicious prosecutions changed. Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002). In Donahue, we interpreted Albright to require a 1983 malicious prosecution complainant to show a Fourth Amendment violation, id. at 380, namely, a violation arising from an action occurring between arrest and trial. Id. at 381. Albright left standing the rule that to make out a claim of malicious prosecution a party must demonstrate that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996) (citing Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993)).

At issue in the present case is whether the District Court erred in granting a motion for judgment as a matter of law against the Nawrockis with respect to their claim of malicious prosecution against Fluegel. It is clear that Fluegel initiated a criminal proceeding against Nawrocki and that the proceeding ended in her favor. Further, there was a "seizure" of Nawrocki that occurred during the appropriate time period to constitute a possible Fourth Amendment violation. The question then is whether the District Court erred in finding as a matter of law that Fluegel had probable cause for Nawrocki's prosecution, a matter on which this court conducts a plenary review. Mosley v. Wilson, 102 F.3d 85, 89 (3d Cir. 1996).

The District Court held that Fluegel had probable cause to arrest Nawrocki in significant part because of the polygraph evidence which the Nawrockis claim was erroneously admitted. We review the District Court's evidentiary rulings for abuse of discretion. Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 110 (3d Cir. 1999). Erroneous evidentiary rulings will be considered harmless if "it is highly probable that the district court's [evidentiary decision] did not affect [the party's] substantial rights." Becker v. ARCO Chem. Co., 207 F.3d 176, 179 (3d Cir. 2000).

Rulings of the appellate courts on the admissibility of results of polygraph tests have differed. This court has not adopted a per se exclusionary rule. See, e.g., United States v. Johnson, 816 F.2d 918, 923 (3d Cir. 1987) (stating polygraph evidence would have been admissible to rebut defendant's claim that confession was coerced).

More recently, based on the Supreme Court's decision in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588-589 (1993) (holding that expert testimony may be admissible even if not generally accepted in the relevant scientific community, provided that it qualifies in some other way as reliable under Federal Rule of Evidence 702), some trial courts have found polygraph evidence admissible. See, e.g., United States v. Crumby, 895 F. Supp., 1354, 1358-63 (D. Ariz. 1995) (polygraph evidence admissible because sufficiently reliable given narrow purposes); United States v. Galbreth, 908 F. Supp. 877, 878-95 (D. N.M. 1995) (polygraph evidence admissible because reliable in specific case). However, most appellate courts that have discussed polygraph evidence

after Daubert have ruled against admitting it.  See, e.g., United States v. Lea, 249 F.3d 632, 639-40 (7th Cir. 2001) (holding admissibility of polygraph evidence should be resolved under Fed. R. Evid. 403 balancing test but reliability of polygraph test may be included to determine how probative particular polygraph test is); United States v. Benavidez-Benavidez, 217 F.3d 720, 725 (9th Cir. 2000) (district court may exclude polygraph evidence as unduly prejudicial under Rule 403).

Typically, the question concerning the admissibility of polygraph evidence is whether, in a criminal trial, an expert can testify about the truthfulness of a witness or defendant on the basis of the results of a polygraph test.  In the present case, the District Court held that the polygraph evidence was not being admitted for its truth, but rather to prove probable cause.  In particular, the polygraph evidence was used by the District Court to show that Fluegel had adequately considered whether Chambers might be responsible for her own harassment.  App. at 104.  Based on our review of the record in this case, we cannot find that the District Court abused its discretion in admitting the polygraph evidence for this limited purpose.

The Nawrockis also argue that the District Court erred in refusing to admit evidence concerning the presence of glue on the stamp that had Chambers' DNA on it and in quashing subpoenas for witnesses who could testify about Chambers' alleged history of being a victim.  They claim that this evidence would have shown that Fluegel failed to adequately investigate the possibility that Chambers herself was responsible for the harassing letters.  The Nawrockis fail, however, to provide enough details about these issues to support a determination that the District Court's evidentiary rulings "affect[ed] the[ir] substantial rights."  Fed. R. Civ. P. 61.  Therefore, we will not overturn the District Court's evidentiary rulings.

C.    Fourteenth Amendment Due Process Claim

The Nawrockis included a Fourteenth Amendment Due Process claim in their original complaint.  In its July 1998 decision, the District Court found that the Nawrockis had a procedural due process claim upon which relief could be granted.  App. at 17.  However, in its July 17, 2000 order, the District Court did not include any procedural due process claim in its list of the Nawrockis' claims that remained standing.  App. at 39.  The Nawrockis correctly note that the procedural due process claim was not among those claims that the District Court disposed of in its July 17, 2000 order.  They now argue that this court should order a new trial in which they can be heard on the allegedly unresolved Fourteenth Amendment claim.  In response, appellees argue that this claim was either dismissed or, if not, that it had been waived by the Nawrockis' failure to preserve the claim at trial.

It is a long-standing rule that for a claim to be reviewable on appeal, it must have been "pressed or passed upon below."  United States v. Williams, 504 U.S. 36, 41 (1992).  It is not evident that the District Court considered the Nawrockis' Fourteenth Amendment Due Process claim which was not dismissed in July 1998 nor included in the court's July 2000 list of claims that were still unresolved.  Appellees plausibly suggest that the reason the District Court did not include this claim is that it was directed at the School District, which had settled with the Nawrockis before the trial (although these claims were not dismissed until early in 2002).

The Nawrockis argue that they raised their Fourteenth Amendment Due Process claim at trial when they asked the District Court to reconsider their claims against the Township, some of which had been dismissed.  However, the Nawrockis did not mention their Fourteenth Amendment claim against the Township.  While the District Court denied the motion for reconsideration of municipal liability, it did not specifically refer to the Nawrockis' Fourteenth Amendment Due Process claim, which they failed to call to its attention.  On the basis of these facts, we find that the Nawrockis failed to sufficiently press their Fourteenth Amendment Due Process claim and thereby waived it.

IV.

CONCLUSION

The situation that led to this unfortunate series of events is essentially unresolved. There has been no final definitive determination as to who was the party responsible for the harassing letters.  We can understand that the Nawrockis may well feel that they have been victimized.  However, for the reasons set forth above, the District Court neither erred nor abused its discretion in ruling as it did.  Not every perceived wrong can be resolved by a legal action.

For the reasons described herein, the judgment of the District Court will be affirmed.

_____

TO THE CLERK:

Please file the foregoing opinion.


/s/Dolores K. Sloviter

_____
                      Circuit Judge