

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2003

# Noone v. Ocean City

Precedential or Non-Precedential: Non-Precedential

Docket 01-4072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Noone v. Ocean City" (2003). *2003 Decisions.* Paper 738.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/738

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 01-4072

———————

JAMES F. NOONE,
      Appellant

v.

THE CITY OF OCEAN CITY;
OCEAN CITY POLICE DEPARTMENT;
DEAN SPENCER, SERGEANT;
JOHN DOE, LAW ENFORCEMENT OFFICERS 1-100,
jointly, severally and in the alternative;
SCOTT ADAMS, SERGEANT; JOHN WERLEY, LIEUTENANT;
RYAN WOKOCK, OFFICER; DAVE ROLAND, OFFICER;
LaROCCA; RICK COSTIGAN, OFFICER; ROBERT COOB;
TOM FINNEGAN, OFFICER; CHAD CALLAGHAN, OFFICER;
DENNIS JONES, OFFICER; JOHN CAMPO, OFFICER;
DAVE HALL, OFFICER; BRIAN TROSTLE, PATROLMAN;
JOHN DOE, LAW ENFORCEMENT OFFICERS 1-86,
jointly, severally and in the alternative

————————————

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 99-cv-01380
(Honorable Joel A. Pisano)

———————

Argued September 20, 2002

Before: SCIRICA, ALITO and McKEE, Circuit Judges

(Filed: March 14, 2003        )

ARTHUR J. MURRAY, ESQUIRE (ARGUED)
Jacobs & Barbone
1125 Pacific Avenue
Atlantic City, New Jersey 08401

     Attorney for Appellant


THOMAS B. REYNOLDS, ESQUIRE (ARGUED)
Reynolds & Drake
29 North Shore Road
P.O. Box 345
Absecon, New Jersey 08201

     Attorney for Appellees,
     City of Ocean City, Ocean City Police Department,
     Sergeant Dean Spencer, Patrolman Brian Trostle,
     Patrolman Bruce Warren


DAVID S. DeWEESE, ESQUIRE (ARGUED)
Stagliano & DeWeese
3200 Pacific Avenue
Wildwood, New Jersey 08260

     Attorney for Appellees,
     Sergeant Scott Adams, Lieutenant John Werley,
     Officer Ryan Wokock, Officer Dave Roland,
     Officer LaRocca, Officer Rick Costigan,
     Officer Robert Coob, Officer Tom Finnegan,
     Officer Chad Callaghan, Officer Dennis Jones,
     Officer John Campo, Officer Dave Hall

_____

OPINION OF THE COURT

_____


SCIRICA, Circuit Judge.

In this action under 42 U.S.C. § 1983, plaintiff appeals the grant of summary judgment in favor of defendant.

**I.**

This case involves two separate incidents that took place in Ocean City, New Jersey, at the 2004 Glenwood Drive residence of plaintiff Dr. James F. Noone Jr. ("Noone"). On the night of May 10, 1997, Noone's son, James F. Noone, III (Noone III"), held a party at his father's residence. Sergeant Dean Spencer of the Ocean City Police Department showed up to investigate a stolen vehicle and a drunken driving incident. Spencer attempted to question Noone III, who allegedly refused to provide information, including his name, date of birth, and address. As a result, Spencer issued a summons charging Noone III with obstruction of justice, a disorderly persons offense. N.J. Stat. Ann. § 2C:29. The summons named "James Noone" but did not include a date of birth or social security number.

Noone III did not respond to the summons. A municipal court issued a warrant for "James Noone" on July 9, 1997, and forwarded it to the Police Department, where it was entered into a computer system. The computer identified plaintiff Noone, the father. Consequently, the warrant issued for Noone rather than Noone III. Patrol Officers Bruce Warren and Brian Trostle served the warrant on July 19, 1997. Noone explained that he was not in Ocean City on May 10, 1997, that he never received a copy of the summons and complaint, and that the warrant was a mistake.[1] Furthermore, because he was expecting 150

---

[1]Although Noone asserted that Warren and Trostle had the wrong person, there was no

(continued...)

guests in the next half hour, he requested that the matter be resolved at a later date. Warren and Trostle refused Noone's request and arrested him under the warrant. Noone was detained in the Police Department for one hour before posting bail in the amount of $175.00.                    The following year, on the night of July 25, 1998, Noone held his annual "Night in Venice" party where officers of the Community Policing Unit witnessed underage drinking and reported noise ordinance violations. In response, Defendants Robert Scott Adams, Johnathan Wereley, Ryan Wokock, David Rowland,[2] Daniel LaRocca, Rick Costigan, Robert Koob,[3] Tom Finnegan, and Dennis Jones (collectively, "Individual Defendants") reported to Noone's residence. Based on their own observations, Individual Defendants entered Noone's property, including his patio and house, where they remained for 15-30 minutes. The officers had neither a warrant nor Noone's permission to gain entry.

Despite seeing what they believed to be underage drinking, Individual Defendants issued no summons or citations while on Noone's property. But later on during the course of the evening, ten to fifteen people associated with Noone's party were arrested for underage drinking. Noone was neither arrested nor issued a summons or citation.

On March 26, 1999, Noone filed a complaint against Ocean City and the Police Department ("Municipal Defendants") and against Sergeant Spencer and 100 "John Doe" police

---

[1](...continued)
reference to Noone's son during Noone's discussion with Warren and Trostle.

[2]The caption spells Officer Rowland's name as "Roland." His interrogatory answers use the "Rowland" spelling.

[3]The caption spells Officer Koob's name as "Coob."

4

officers.  Soon after, Noone filed an amended complaint, adding the remaining defendants.[4]  He alleged, *inter alia*, that he was entitled to relief for violation of his Fourth Amendment rights under 42 U.S.C. § 1983.  Ocean City, the Police Department, Spencer, Trostle, and Warren filed a joint motion for summary judgment.  The remaining defendants filed separate joint motions for summary judgment.  The District Court Judge granted summary judgment to all defendants. This appeal followed.[5]

## II.

Our review of the entry of summary judgment is plenary.  See, e.g., Beers-Capitol v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001).  We apply the same test the District Court should have used initially.  Omnipoint Communications Enter., L.P. v. Newton Township, 219 F.3d 240, 242 (3d Cir. 2000).  Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

---

[4]Three officers of the Police Department, Dave Hall, John Campo, and Chad Callaghan, were also added as defendants in the Amended Complaint, but subsequently dismissed with Noone's consent.  Noone does not challenge this determination on appeal.

[5]The District Court had jurisdiction under  28 U.S.C. §§ 1331 and 1334, with supplemental jurisdiction over state law claims.  We have jurisdiction under 28 U.S.C. § 1291.

### III.  1997 Incident

Under § 1983, a plaintiff must prove a person acting under color of state law deprived him of a federal right.  See Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000).  Government officials performing discretionary functions are generally not liable for civil damages under § 1983 by reason of granted qualified immunity.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  In determining qualified immunity, a court must first ask whether "the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right."  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).  If answered affirmatively, the question becomes whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (citing Layne, 526 U.S. 603).

As noted, Noone alleges his arrest violated the Fourth Amendment.  An arrest violates the Fourth Amendment if executed pursuant to an erroneously issued warrant.  Berg, 219 F.3d at 269-71 (citing Whitley v. Warden, 401 U.S. 560 (1971)).[6]  Here, a warrant for Noone was generated after a computer retrieved the wrong "James Noone" out

---

[6]In Berg, a warrant for "Berg" was generated after a clerk mistakenly entered the criminal complaint number of "Banks," the person whose arrest was actually sought. 219 F.3d at 266. Consequently, Berg was mistakenly arrested for Banks's alleged misdeed. Id. at 267-68.  As a result of his mistaken arrest, Berg brought suit, pursuant to § 1983, against the county and various state officials alleging, *inter alia*, violation of the Fourth Amendment. Id. at 268.  The district court concluded there was no Fourth Amendment violation because the erroneously issued warrant supplied probable cause to arrest. Id. We disagreed and held that an improperly issued warrant cannot provide probable cause for an arrest. Id.

of the Police Department record system. Noone's arrest violated his Fourth Amendment rights because it was executed pursuant to an erroneously issued warrant.

## A.    Defendants Warren, Trostle, and Spencer

The District Court granted Warren and Trostle qualified immunity, holding that a reasonable police officer, under these circumstances, would believe there was probable cause for Noone's arrest. Where an officer executes an arrest based on an objectively reasonable belief that there is a valid warrant, he may be entitled to qualified immunity. Berg, 219 F.3d at 272. It is usually reasonable for an officer to believe a warrant was issued for probable cause. Id. Furthermore, an arresting officer is not required to make an independent investigation for every suspect who claims innocence, provided the officer's reliance on an arrest warrant is reasonable in light of the relevant circumstances. Id. at 272-73.

Noone was arrested based on a warrant containing his name and date of birth. Although Noone proclaimed his innocence, it was not unreasonable for Warren and Trostle to conclude that Noone was the proper individual sought. Furthermore, because the warrant was issued for failure to appear in court, it was not unreasonable for the officers to refuse Noone's request to resolve the matter at a later date. For these reasons, we will affirm the grant of summary judgment with respect to Warren and Trostle.

With respect to defendant Spencer, Noone contends there was a genuine issue of material fact whether Spencer was liable under § 1983 on the basis of deliberate indifference. In Berg, we left open the question whether liability under these

7

circumstances should be analyzed as a Fourth Amendment violation or as due process "deliberate indifference."[7] 219 F.3d at 274. We need not resolve that here because under either theory, Spencer is entitled to summary judgment.

As for a possible Fourth Amendment violation, the District Court held: "[T]here is no evidence before the Court that Spencer intentionally caused the arrest of plaintiff. Indeed, the warrant for plaintiff's arrest was issued by the municipal court for failure to appear before the municipal court judge. There is no evidence which implicates Spencer in this decision." We agree.[8] There can be no § 1983 liability here under the Fourth Amendment.

Under a due process theory, the District Court held:

---

[7] In Berg we said:

> Where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, it may be that a due process "deliberate indifference" rather than a Fourth Amendment analysis is appropriate. . . . We need not decide that here, however, because Berg has not alleged anything more than mere negligence on Demko's part.

219 F.3d at 274.

[8] In his deposition, Spencer stated that he did not fill in a date of birth or social security number because Noone III "gave [him] no information." He "attempted to contact the court on at least two prior occasions to let them know there was confusion between a James Noone, the father, and a James Noone, the son." When asked why he did not try to identify more specifically the James Noone to which he was referring, Spencer said, "The system is not set up to do that and I tried to get that rectified with the court." When asked if he could have done more, Spencer said, "Yes, I'm sure I could have, but I don't normally do that because I was a shift commander." He did not assign to one of his subordinate officers the task of tracking down more information because Noone III "was totally uncooperative at that time. There was nothing to indicate to me [Spencer] that he would be more cooperative at another time." Spencer did not run a DMV check on James Noone using the address he had because he was not capable of doing that for a Pennsylvania license.

8

There were no reasonably available measures to reduce or eliminate a serious risk which Spencer could have taken in this case. Indeed, the entire incident could have been avoided in its entirety i[f] plaintiff's son [had] provided a modicum of cooperation with Spencer during the stolen car investigation. Spencer did not arrest plaintiff; and there is no evidence of deliberate indifference on the part of Spencer. Accordingly, there can be no liability.

Knowing of two people by the name "James Noone" on the date the summons issued and aware of potential confusion, Spencer "attempted to contact the court on at least two prior occasions to let them know there was confusion between a James Noone, the father, and James Noone, the son." The reason the summons lacked a date of birth, social security number, and proper address was "because Mr. Noone didn't give it to me [Spencer] and that's why he was charged with obstructing justice." Spencer also testified that the reason he did not have the information was "because he [Noone III] was totally uncooperative at that time. There was nothing to indicate to me [Spencer] that he would be more cooperative at another time."

In hindsight, it is possible that Spencer could have done more at a later time to try to ascertain the correct date of birth, social security number, and address. But the failure to do so would merely amount to negligence, not deliberate indifference. Therefore, under either a Fourth Amendment or due process claim, Spencer was entitled to summary judgment.

**B.      Municipal Defendants**

A municipal unit may be sued for damages under § 1983 for its employee's unconstitutional action if the "action that is alleged to be unconstitutional implements or

9

executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 (1978). There can be liability only if: (1) plaintiff's rights were violated by a policy or custom of the municipality, and (2) the municipality's deliberate indifference was the moving force behind plaintiff's alleged injury. See Berg, 219 F.3d at 275-76. Failure to properly train an employee will be considered deliberate indifference only where that failure causes a pattern of violations. Id. at 276.

In Berg, we reversed a grant of summary judgement in favor of a municipality so that the factfinder could address whether the municipality acted with deliberate indifference. Id. at 277. Specifically, we found the record lacked evidence of procedures guarding against mistakenly issued warrants where the municipality "employed a design where the slip of a finger could result in wrongful arrest and imprisonment." Id. at 267, 277. We concluded that the municipality failed to provide protective measures and failsafes against erroneously issued warrants and said, "When such a simple mistake can so obviously lead to a constitutional violation, we cannot hold that the municipality was not deliberately indifferent to the risk as a matter of law." Id.

Unlike Berg, Municipal Defendants here did not employ a design where "the slip of the finger could result in wrongful arrest and imprisonment." No reasonable safeguards have been identified that Municipal Defendants could have instituted to protect against the type of error that occurred here. The form of summons provided for a defendant's name, address, social security number, and date of birth. This was not a situation "where such a

10

simple mistake [could] so easily lead to a constitutional violation." Thus, we find no basis upon which to hold Municipal Defendants liable. We will affirm the grant of summary judgment.

### IV. 1998 Incident

Noone challenges the District Court's finding of qualified immunity with respect to Individual Defendants and lack of liability with respect to Municipal Defendants for their roles in the 1998 Incident.

### A.      Individual Defendants

The District Court found Individual Defendants entitled to qualified immunity without identifying whether a constitutional violation occurred. But qualified immunity analysis begins with determining whether there was a constitutional violation. Curley, 298 F.3d at 277 (citing Layne, 526 U.S. 603). Our independent review of the record reveals no violation. Therefore, we do not reach qualified immunity and will affirm the grant of summary judgment on Noone's § 1983 claims with respect to Individual Defendants.

Under the Fourth Amendment, a warrantless entry into a private home is "presumptively unreasonable." United States v. Rohrig, 98 F.3d 1506, 1514 (6th Cir. 1996) (citing Payton v. New York, 445 U.S. 573, 586 (1980)). "Exigent circumstances," however, may justify a warrantless entry into a home if the governmental interest outweighs the private individual's interest in remaining free from governmental intrusions. Rohrig, 98 F.3d at 1522. For example, in Rohrig, the Sixth Circuit found exigent circumstances justified police officers' warrantless entry into plaintiff's home in response to a noise

11

ordinance complaint.  Id. at 1523.  The court said there was no Fourth Amendment violation

because the governmental interest in immediately abating an ongoing nuisance by quelling

loud and disruptive noise in a residential neighborhood justified the warrantless intrusion.

Id. at 1522.

Like Rohrig, the record here shows exigent circumstances justified a warrantless

entry into Noone's property during the 1998 Incident.  Individual Defendants observed what

they believed to be underage drinking and violation of a noise ordinance.  The governmental

interest in abating these illegal activities justified warrantless entry into Noone's property.

Accordingly, summary judgment for Individual Defendants was proper.

**B.      Municipal Defendants**

A municipality may be liable for the unconstitutional actions of its officials only

where a plaintiff's rights were violated by a policy or custom of the municipality.  Monell,

436 U.S. at 690-91.  We recently articulated guiding principles for deciding whether an

official's act permits an inference of government policy:

> First, . . . municipalities may be held liable under § 1983 only for acts for
> which the municipality itself is actually responsible, "that is, acts which the
> municipality has officially sanctioned or ordered."  Second, only those
> municipal officials who have "final policymaking authority" may by their
> actions subject the government to § 1983 liability.  Third, whether a particular
> official has "final policymaking authority" is a question of state law.  Fourth,
> the challenged action must have been taken pursuant to a policy adopted by the
> official or officials responsible under state law for making policy in that area
> of the city's business.

Nawrocki v. Township of Coolbaugh, 34 Fed. Appx. 832, 837 (3d Cir. 2002) (quoting

Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)) (other citations omitted).

12

In Nawrocki, a plaintiff appealed a grant of summary judgment in favor of a township on § 1983 claims for due process violations based on, *inter alia*, malicious prosecution. 34 Fed. Appx. at 834, 836. We affirmed. Id. at 839. In that case, the plaintiff argued that an unconstitutional government policy could be inferred from a government official's isolated act. Id. at 836-37. We held that "[a]lthough there may have been some inadequacies in the way in which municipal policies were followed . . . an official's failure to adhere strictly to municipal policies does not itself support an inference of a policy that can subject the Township to liability." Id. at 837. Thus, we held that the plaintiff failed to establish liability under § 1983. Id.

Here, Noone asserts that the police officers were police department policymakers whose actions constituted municipal policy, even though they occurred only once. Thus, Noone argues that Municipal Defendants are liable for the police officers' action. We disagree. As we stated in Nawrocki, where an official fails to adhere strictly to municipal policies, we will not infer that a policy exists to subject the municipality to liability under § 1983. The police officers' actions in the 1998 Incident were part of an isolated incident that was neither officially sanctioned nor ordered by Municipal Defendants. Thus, we will affirm the grant of summary judgment.

**V.**

For the foregoing reasons, we will affirm the judgment of the District Court.

13

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
Circuit Judge